FILED
2010 Jul-02 PM 01:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **HARVEY LEE MONTGOMERY, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:10-CV-21-RDP** |
| | } | |
| **LONG-LEWIS, INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

**MEMORANDUM OPINION**

This case is before the court on Plaintiffs' Motion to Remand (Doc. #12), filed January 27, 2010. For the following reasons, the Motion is due to be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

On March 25, 2009, Plaintiffs, both Alabama citizens, filed the instant lawsuit in the Circuit Court of Jefferson County, Alabama. (Doc. #13-2). Plaintiffs alleged claims arising under state law for strict liability, negligence, breach of warranty, conspiracy, premises liability, and loss of consortium. (Doc. #13-2 at 24-33). The claims stem from Plaintiff Harvey Montgomery's alleged exposure to "asbestos-containing products that were produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce" by sixty-four Defendants. (Doc. #13-2 at 8). At the outset of the state court litigation, diversity jurisdiction was absent. Of the sixty-four named Defendants, five were incorporated or had headquarters in Alabama: (1) Long-Lewis, Inc.; (2) Birmingham Rubber & Gasket Co., Inc.; (3) McConnell Sales & Engineering Corp.; (4) Wittichen Supply Co.; and (5) Refractory Sales & Service Co., Inc. (Doc. #1 at 3-7).

As to the five non-diverse Defendants, Plaintiffs voluntarily dismissed Wittichen Supply Co. on May 20, 2009; Long-Lewis, Inc. on August 10, 2009; and Birmingham Rubber & Gasket Co., Inc.

and McConnell Sales & Engineering Corp. on October 1, 2009. (Doc. #1 at 3). Accordingly, as of October 1, 2009, the only remaining Defendant that prevented complete diversity was Refractory Sales & Service Co., Inc.

Refractory Sales filed a motion for summary judgment on November 12, 2009. (Doc. #17, Ex. A). Plaintiffs' counsel informed the state court that they did not oppose the motion. (Doc. #13 at 12). "Plaintiffs informed the trial court of their non-opposition to the summary judgment based on the absence of evidence in opposition to the motion and left the decision to grant or deny Refractory Sales'[s] motion for summary judgment entirely within the discretion of the court." (Doc. #13 at 12). On December 7, 2009, the Circuit Court of Jefferson County, in response to counsel's notification, granted the motion as "unopposed" and dismissed Plaintiffs' claims against Refractory Sales with prejudice. (Doc. #17, Ex. B).

By mid-December,[1] only four Defendants[2] remained: (1) CertainTeed Corp. (incorporated in Delaware; principal place of business in Pennsylvania); (2) Garlock Sealing Technologies LLC (incorporated in Delaware; principal place of business in New York); (3) Metropolitan Life Insurance Co. (incorporated in New York; principal place of business in New York); and (4) Noland Co. (incorporated in Virginia; principal place of business in Ohio). On January 6, 2010, and exactly thirty days after the state court's dismissal of Refractory Sales (*i.e.*, the final non-diverse Defendant),

---

[1]Additionally, Defendants Burnham Corp.; Koppers Inc.; Kewanee Boiler Manufacturing Co.; Schneider Electric; Sepco Corp.; and Superior Boiler Works were dismissed through summary judgment on December 7, 2009. (Doc. #1 at 3-7). Defendants Cleaver Brooks Inc.; Crane Co.; General Electric Co.; Georgia-Pacific LLC; and Honeywell Inc. were dismissed through summary judgment on December 14, 2009. (Doc. #1 at 3-7).

[2]A fifth Defendant technically remains in the case: CSR Limited. (Doc. #1 at 5). Plaintiffs never perfected service of process on this Defendant. (Doc. #1 at 5). For jurisdictional purposes, CSR Limited is an Australian entity and is, therefore, diverse from Plaintiffs. (Doc. #1 at 5). And in any event, Defendants argue that "[a] defendant who has not been properly served with process need not consent to a notice of removal in order for the removal to be valid." (Doc. #1 at 9). Plaintiffs have not contested this proposition. Thus, Plaintiffs' failure to serve Defendant CSR Limited is analytically unrelated to the validity of Defendants' removal petition.

the remaining Defendants filed their notice of removal with this court. (Doc. #1). On January 27, 2010, Plaintiffs filed their motion to remand. (Doc. #12). The court ordered briefing. (Doc. #14). On February 9, 2010, Defendants filed their opposition to Plaintiffs' motion. (Doc. #16). On February 18, 2010, Plaintiffs filed their reply. (Doc. #18). On February 24, 2010, Defendants filed their surreply. (Doc. #20). On March 1, 2010, Plaintiffs filed their surreply. (Doc. #22). The motion to remand, having been fully briefed, is now properly under submission.

## II. DISCUSSION

The propriety of Defendants' removal turns on the applicability of the voluntary-involuntary rule. Stated generally, "involuntary changes in a case do not create removability if the case as stated in the plaintiff's initial pleading was not removable." 16 MOORE'S FEDERAL PRACTICE – CIVIL § 107.30 (2010). The rule originated in two Supreme Court decisions, *Powers v. Chesapeake & Ohio Railway Co.*, 169 U.S. 92 (1898), and *Whitcomb v. Smithson*, 175 U.S. 635 (1900). In *Powers*, "the plaintiff discontinued his action against all of the [non-diverse] defendants, leaving it an action between citizens of different States . . . ." *Powers*, 169 U.S. at 98. Consequently, the Supreme Court concluded that removal was proper. *Id.* at 102. In *Whitcomb*, on the other hand, the non-diverse defendant filed a motion for directed verdict. *Whitcomb*, 175 U.S. at 637. The state trial court granted the motion, which was "adverse to [the] plaintiff, and without his assent." *Id.* at 638. Based on this development, the diverse defendants removed the case to federal court. *Id.* at 637. The Supreme Court, however, held that removal was improper because the plaintiff had "insisted" on the non-diverse defendant's liability, yet the trial court granted the motion for directed verdict over the plaintiff's objection. *Id.* at 637-38.

Taken together, these cases stand for the proposition that, "if the resident defendant [is]

dismissed from the case by the voluntary act of the plaintiff, the case [becomes] removable, but if the dismissal [is] the result of either the defendant's or the court's action against the wish of the plaintiff, the case [cannot] be removed." *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 546 (5th Cir. 1967) (quoting Note, *The Effect of Section 1446(b) on the Non-Resident's Right to Remove*, 115 U. PA. L. REV. 264, 267 (1966)); *see also In re Iowa Mfg. Co.*, 747 F.2d 462, 463 (8th Cir. 1984) ("If the dismissal of a defendant in state court created complete diversity between all parties so that the case may be removed to federal court, the propriety of removal is determined according to whether the dismissal was voluntary or involuntary with respect to the plaintiff."); *Berbig v. Sears Roebuck & Co., Inc.*, 568 F. Supp. 2d 1033, 1040 (D. Minn. 2008) ("The 'voluntary-involuntary' rule applies when a non-diverse defendant is dismissed and only diverse defendants remain in a case, thereby transforming an unremovable action into a removable one.") (citation omitted). Federal courts have gleaned two purposes underlying the rule: "First, the rule contributes to judicial economy. . . . Second, some courts have invoked a general principle of deference to the plaintiff's choice of forum." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 72 (7th Cir. 1992) (citations omitted).

Relying on this framework, Plaintiffs claim that construing their acquiescence to Refractory Sales's motion for summary judgment as "voluntary" is "inconsistent with well settled, longstanding case law regarding the judicially created voluntary/involuntary rule." (Doc. #13 at 4). In response, Defendants argue that Plaintiffs "demonstrably discontinued and abandoned their claims" against Refractory Sales, which is functionally equivalent to a voluntary dismissal. (Doc. #16 at 6). Applying the relevant caselaw to the procedural events that occurred in the state court, the court agrees that Plaintiffs voluntarily relinquished their claims against Refractory Sales.

First, Plaintiffs consented to the state court's adverse summary judgment ruling. Plaintiffs

notified the Circuit Court of Jefferson County that they did not oppose Refractory Sales's motion for summary judgment. The legal significance of that statement, therefore, is critical in assessing the voluntariness of the dismissal. According to the Alabama Supreme Court, "an adverse party is not required to respond to a motion for summary judgment," but that decision is "perilous" because "the trial court [has] no alternative but to consider the evidence presented by the moving party as uncontroverted." *Pritchett v. ICN Med. Alliance, Inc.*, 938 So. 2d 933, 936 (Ala. 2006) (quoting *Harold Brown Builders, Inc. v. Jordan Co.*, 401 So. 2d 36, 38 (Ala. 1981)); *see also Smith v. Lawyers Surety Corp.*, 624 So. 2d 526, 528 (Ala. 1993) ("If the nonmovant fails to present any evidence to contradict the movant's prima facie showing, the trial court is compelled to view the evidence as uncontradicted.") (citations omitted). Nevertheless, "[a] lack of response by the nonmoving party will not automatically result in the entry of a summary judgment, but, instead, that party will risk having the motion granted against him if granting the motion is appropriate *on the merits*." *Ex parte City of Montgomery*, 758 So. 2d 565, 568 (Ala. 1999) (citing *Ex parte Oden*, 617 So. 2d 1020 (Ala. 1992)) (emphasis added); *see also* ALA. R. CIV. P. 56(e) ("If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against him.") (emphasis added). Accordingly, a mere failure to respond, on its own, does not necessarily demand entry of summary judgment.

In *Sokol v. Bruno's, Inc.*, 527 So. 2d 1245 (Ala. 1988), however, the Alabama Supreme Court explained the impact of a plaintiff's notification to the trial court that he or she does not oppose the defendant's motion for summary judgment. Specifically, in *Sokol*, in response to the defendant's motion for summary judgment, the plaintiff informed the court that he "would not oppose" the motion because he lacked sufficient evidence. *Id.* at 1246. On this basis, the trial court granted the

defendant's motion, but the plaintiff thereafter attempted to revive the dismissed claim. *Id.* On appeal, the Alabama Supreme Court reiterated the long-standing rule that a "party cannot appeal from a judgment to which he has consented." *Id.* at 1247 (quoting *City of Bessemer v. Brantley*, 65 So. 2d 160, 166 (Ala. 1953)). Construing the plaintiff's statement that he "would not oppose" the motion as consent to the adverse judgment, the Alabama Supreme Court concluded that the plaintiff was barred from re-litigating the dismissed claim. *Id.*

Under Alabama law, a failure to respond to summary judgment, therefore, accepts the moving party's factual statement as undisputed. *Pritchett*, 938 So. 2d at 936. Concluding that the evidence is undisputed, however, reflects only one-half of the Rule 56 equation; additionally, the court must consider whether the undisputed evidence warrants entering judgment as a matter of law by comparing the evidence to the relevant legal standards. *City of Montgomery*, 758 So. 2d at 568. A plaintiff's decision not to respond to a summary judgment motion satisfies the first inquiry but not necessarily the second. *Id.* Thus, if an opposing party is silent as to the motion, granting summary judgment operates as an involuntary dismissal because it requires a court's legal evaluation of the undisputed evidence. ALA. R. CIV. P. 56(e).

But in light of *Sokol*, a litigant's silence is analytically distinct from a litigant's affirmative notification that the motion is "unopposed." The former triggers the general rule that, by itself, undisputed facts do not necessarily warrant entering judgment as a matter of law, but the latter operates as formal consent to an adverse judgment. *Sokol*, 527 So. 2d at 1247. Here, Plaintiffs, like the plaintiff in *Sokol* who determined that evidence was unavailable to corroborate his allegations, notified the Circuit Court of Jefferson County that they would not oppose Refractory Sales's motion for summary judgment, which equates to consent under Alabama law.

Indeed, Plaintiffs' acquiescence stemmed from their failure to discover "sufficient evidence supporting [their] allegations" against Refractory Sales. (Doc. #13 at 7). Plaintiffs, having made this determination, were not awaiting an assessment of the controverted legal significance of the uncontroverted facts. Plaintiffs simply lacked evidence to support their claims. As in *Sokol*, Plaintiffs' notification abandoned their claims against Refractory Sales. *See McKinstry v. New England Mut. Life Ins. Co.*, No. 97-0106, 1997 U.S. Dist. LEXIS 9735, at *8-9 (S.D. Ala. May 9, 1997) ("For dismissal of a nondiverse defendant to be voluntary under the voluntary-involuntary rule, 'there must be a definite or unequivocal expression of intent to discontinue the action against the [resident] party.'") (quoting *Naef v. Masonite Corp.*, 923 F. Supp. 1504, 1510 (S.D. Ala. 1996)).

Reviewing Refractory Sales's motion for summary judgment amplifies this conclusion. The motion specifically requested judgment as a matter of law because "there has been no substantial evidence that Plaintiff was ever exposed to any asbestos containing product manufactured, designed, and/or sold by" Refractory Sales and "[t]here is no substantial evidence in this record to create a jury issue with respect to [Plaintiff] working with or in direct proximity to any [Refractory Sales] asbestos containing product." (Doc. #17 at 3). The motion, therefore, did not present facts on which Plaintiffs' claims could have survived on account of an arguable point of law vis-a-vis the undisputed evidentiary record. Rather, the motion requested summary judgment solely because, as Plaintiffs concede, no evidence substantiated their claims.

By acquiescing to this motion, Plaintiffs did not merely stipulate to facts and await a judicial determination regarding legal sufficiency – they readily stipulated to undisputed facts that presented

no colorable basis for relief.[3] Indeed, it is axiomatic that, in this context, the plaintiff must, at a minimum, produce evidence linking the targeted defendant's product to the asbestos-related injury. *See, e.g.*, *Sheffield v. Owens-Corning Fiberglass Corp.*, 595 So. 2d 443, 450 (Ala. 1992) ("Because product identification is one element of causation, the threshold requirement of any products liability action is identification of the injury-causing product and its manufacturer.") (citations omitted). Considering the motion's contents in light of the underlying substantive law, therefore, Plaintiffs' instruction to the Circuit Court of Jefferson County that they did not oppose the motion operated as a clear, unequivocal, and voluntary relinquishment of their claims against Refractory Sales.[4] And deciding not to respond rather than expanding the discovery window or pursuing an alternative course,[5] Plaintiffs were barred from later introducing evidence of Refractory Sales's liability. *City*

---

[3]Plaintiffs attempt to dull the significance of informing the Circuit Court of Jefferson County that they did not oppose the motion:

> Plaintiffs notified the court as a courtesy in order to allow the court to properly schedule allotted time for oral argument and also to notify the defense counsel for Refractory Sales so as to enable them to give this time to more pressing issues. Again, this was just a courtesy notification, nothing more. In a time where civility and professional courtesy is often lacking, it is unfortunate that when such courtesy if offered, it is used as a misapplied strategy against the courteous party.

(Doc. #18 at 7). This explanation is unavailing. In Plaintiffs' initial brief in support of remand, they freely admit that they had not discovered "sufficient evidence supporting [their] allegations" against Refractory Sales. (Doc. #13 at 7). Consequently, their response to the motion was more than a mere "courtesy" to the court and opposing counsel.

[4]To these points, Plaintiffs suggest that the trial court's decision was not necessarily a foregone conclusion: "[Plaintiffs] left the decision to grant or deny Refractory Sales'[s] motion for summary judgment entirely within the discretion of the court." (Doc. #13 at 12). But it is simply illogical to suggest that the Circuit Court of Jefferson County had any option other than granting the motion as unopposed. As a practical matter, courts typically do not insist that parties prosecute their claims when they freely acknowledge a lack of evidentiary support for them.

[5]The court's conclusion regarding Plaintiffs' voluntariness is further buttressed because, as Defendants accurately note, Plaintiffs had available alternatives: "They could have asked for more time to try to discover facts that would keep Refractory in the case. They could have advised the court that they had no response to the motion but nevertheless opposed it and preferred that it be denied." (Doc. #16 at 5). If Plaintiffs had pursued these options – or at the very least, not responded to the motion – then this case would present a closer question. But on the facts of this case, "[o]n the 'voluntary/involuntary' spectrum, [the dismissal] was on the voluntary side." (Doc. #16 at 5). In this sense, as Plaintiffs suggest, a voluntary act "is one that is proactive and not reactive." (Doc. #13 at 6). By affirmatively conceding the

*of Montgomery*, 758 So. 2d at 568 ("[O]nce the trial court enters a summary judgment, '[a] post-judgment motion may not be used to belatedly submit evidence in opposition to a motion for a summary judgment.'") (quoting *White v. Howie*, 677 So. 2d 752, 754 (Ala. Civ. App. 1995)). In this regard, Plaintiffs "definitely and clearly indicate[d] [their] intention to abandon or discontinue the action as to" Refractory Sales. *Aydell v. Sterns*, 677 F. Supp. 877, 881 (M.D. La. 1988) (citing *Powers v. Chesapeake & Ohio Ry. Co.*, 169 U.S. 92 (1898)); *see also Heniford v. Am. Motors Sales Corp.*, 471 F. Supp. 328, 335 (D.S.C. 1979) ("Regardless of whether it be classified a dismissal, discontinuance, termination, or abandonment, plaintiffs extinguished their claim against the resident defendant in explicitly instructing the jury not to return a verdict against him.").

Furthermore, the court finds the decision in *Rodenroth v. Firestone Tire & Rubber Co.*, No. 87-0727, 1987 U.S. Dist. LEXIS 15770 (E.D. Mich. May 15, 1987), to be highly persuasive. In *Rodenroth*, the resident defendant filed a motion for summary judgment. No. 87-0727, 1987 U.S. Dist. LEXIS 15770, at *1. The plaintiff's "response to the motion indicated he could offer no contest to the motion. [He] did not appear at the hearing on the motion or otherwise oppose [the resident defendant's] motion. Further, plaintiff [had] not indicated a desire to appeal the dismissal, nor can he appeal, given his lack of opposition to the motion." *Id.* The state trial court granted the motion for summary judgment and dismissed the plaintiff's claims against the resident defendant. *Id.* After the dismissal, the non-resident defendant filed a removal petition with the Eastern District of Michigan. *Id.* at *2. Thereafter, the plaintiff filed a motion to remand and argued, *inter alia*, that the dismissal in state court had been involuntary. *Id.* The Eastern District of Michigan disagreed. *Id.* at *6.

---

motion for summary judgment, and considering the available alternatives, Plaintiffs made a proactive decision.

Specifically, the court concluded that the "plaintiff extinguished his claim against the resident defendant" by "acquiesc[ing] in the state court's dismissal," which is the "functional equivalent of a voluntary act by plaintiff." *Id.* at *6 (citing *Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38 (2d Cir. 1980)).[6] Like the plaintiff in *Rodenroth*, Plaintiffs indicated to the Circuit Court of Jefferson County their intent not to oppose Refractory Sales's motion for summary judgment. This expression, which rendered the judgment consensual and final, is voluntary and, therefore, authorizes Defendants' post-dismissal removal. *See id.*; *see also McAfee v. Phillips Petroleum Co.*, 300 F. Supp. 651, 652-53 (D. Mont. 1969) (analyzing the voluntary-involuntary rule and distinguishing between an unopposed motion for summary judgment and a motion for summary judgment to which the plaintiff has consented).

In support of remand, Plaintiffs cite to two cases for the proposition that a party's failure to oppose summary judgment, nevertheless, results in an involuntary dismissal. Neither case supports Plaintiffs' position. First, Plaintiffs cite to *Pender v. Bell Asbestos Mines, Ltd.*, 46 F. Supp. 2d 937 (E.D. Mo. 1999). In *Pender*, the last remaining non-resident defendant filed a motion for summary judgment in state court. *Id.* at 938. In response, the "plaintiff's counsel told defendant's counsel in advance that he would not appear [at the hearing] to oppose the motion," but the trial court did not receive similar notification. *Id.* After the hearing, the court dismissed the non-diverse defendant and

---

[6]In *Quinn*, the Second Circuit held that the finality of the state court dismissal is the decisive consideration under the voluntary-involuntary rule. 616 F.2d at 40 n.2. In *Insinga v. LaBella*, however, the Eleventh Circuit concluded that finality as well as voluntariness are both necessary to assess whether a dismissal is involuntary for removal purposes. 845 F.2d 249, 252 (11th Cir. 1988). Only in this regard did *Insinga* decline to follow *Quinn*. *See Barrow v. Werner Enters., Inc.*, No. 06-983, 2007 U.S. Dist. LEXIS 87296, at *7 (M.D. Ala. Nov. 28, 2007) ("[The Eleventh Circuit] was looking at, and most importantly talking about, only those circumstances where finality was present; it was saying that finality alone was not enough.").

*Rodenroth*, although citing to *Quinn*, accords with the Eleventh Circuit's standards. Specifically, the Eastern District of Michigan assessed both finality and voluntariness when determining the propriety of removal. No. 87-0725, 1987 U.S. Dist. LEXIS 15770, at *6. Accordingly, this court's reliance on *Rodenroth* does not in any way run afoul of the Eleventh Circuit's framework in *Insinga*.

entered the following order: "Motion to dismiss of defendant . . . is called and sustained with the consent of plaintiffs." *Id.*

Importantly, however, the "plaintiff's counsel was not present in the courtroom, did not take part in the argument, did not sign the order, did not take part in preparing the order for dismissal, and the words 'with consent of Plaintiff,' as written in the memorandum granting the motion, were chosen solely by [the non-resident defendant's] attorney *without the plaintiff's knowledge or consent*." *Id.* (emphasis added). Post-dismissal, the remaining defendants, who satisfied the complete diversity requirement, filed their removal petition, and the plaintiffs responded with a motion to remand. *Id.* The court granted their motion. *Id.* at 941. Specifically, the court concluded "that plaintiff did not consent to the dismissal . . . merely because her counsel stated he would not appear to oppose the motion. [The non-diverse defendant] was not voluntarily dismissed by plaintiff, so the case was not removable." *Id.* (citations omitted).

This case, however, is readily distinguishable. Here, Plaintiffs notified the trial court – rather than Defendants' counsel – that they would not oppose the motion for summary judgment. As already stated, if Plaintiffs had remained silent, then the court's dismissal would have been involuntary, but when Plaintiffs notified the court of their intent not to oppose, under Alabama law, the statement legally expressed consent to an adverse judgment. In *Pender*, although the trial court entered an order memorializing the plaintiffs' alleged consent, based on the facts before the Eastern District of Missouri, formal acceptance of the judgment had not been offered. It was the lack of affirmative consent that persuaded the *Pender* court to remand the case. *Pender*, therefore, is inapposite because this case's Plaintiffs encouraged the dismissal, and the record supports that finding.

Second, Plaintiffs cite to *Machinsky v. Johnson & Johnson Medical, Inc.*, 868 F. Supp. 269 (E.D. Mo. 1994), for the proposition that "the plaintiff's failure to oppose [defendant's] motion for dismissal was not a voluntary act." (Doc. #13 at 12). Plaintiffs' isolated reading of *Machinsky* overstates that court's conclusion. In *Machinsky*, the plaintiff did not oppose a motion to dismiss filed by the only resident defendant. *Machinsky*, 868 F. Supp. at 270. Critically, the motion to dismiss was brought under a particular Missouri statute, which warranted dismissal only without prejudice. *Id.* In fact, the particular statutory dismissal "could be set aside for good cause shown *at any time prior to [final] disposition*." *Id.* (emphasis added). The court summarily rejected the non-resident defendants' removal argument that the dismissal "was the 'functional equivalent' of a voluntary act by [the plaintiff] in light of [his] failure to oppose [the] motion to dismiss, and [the plaintiff's] suggestion of language to be used in the order of dismissal." *Id.*

To reach this conclusion, the court relied on *Saylor v. General Motors Corp.*, 416 F. Supp. 1173 (E.D. Ky. 1976). *Id.* In *Saylor*, the Eastern District of Kentucky, which invoked the finality rationale underlying the voluntary-involuntary rule, concluded that the state court's order dismissing the resident defendant "was interlocutory in nature and could not be appealed before a final disposition as to all of plaintiff's claims." 416 F. Supp. at 1175. In that sense, the court concluded that "the petition for removal was prematurely filed since there had been no *final* elimination of the resident defendant in the state court." *Id.* (citation omitted) (emphasis added). Relying on that logic, the *Machinsky* court rejected the removal argument because the dismissal was not final under Missouri law. 868 F. Supp. at 270. At any point during the litigation, the plaintiff, for good cause, could have revived his claims against the resident defendant and, thereby, eliminate complete diversity. *Id.* *Machinksy*, therefore, stands for a limited proposition unique to the facts of the case:

if a plaintiff's consent to a dismissal does not preclude him from subsequently reviving the dismissed claims during the course of the litigation, then the dismissal is involuntary for removal purposes.

Again, this case is distinguishable. Unlike the situation in *Machinsky*, here, Plaintiffs not only informed the state court that they did not oppose the motion, but they did not, through private agreement or by application of substantive law, reserve their right to later litigate claims against Refractory Sales; instead, they facilitated and accepted the adverse judgment. The Circuit Court of Jefferson County dismissed these claims with prejudice and, therefore, foreclosed Plaintiffs' opportunity to reinstate their causes of action against Refractory Sales. Consequently, *Machinsky* does not counsel in favor of remand.

Finally, at the root of their arguments, Plaintiffs assume that the dismissal was involuntary because it required a court order. But that assumption misses the mark. If Plaintiffs' position (*i.e.*, a truly voluntary dismissal may not result when a court enters a dismissal order) were to be accepted, then only a narrow universe of unquestionably voluntary acts would overcome the voluntary-involuntary rule. For example, in Alabama, a plaintiff's voluntary dismissal *requires* a court order if, provided that the parties have not filed a joint stipulation of dismissal, the adverse party has filed an answer or motion for summary judgment, whichever first occurs. ALA. R. CIV. P. 41(a)(2). Similarly, within "forty-two (42) days before the first setting of the case for trial," a plaintiff may not amend his or her complaint without leave of court. ALA. R. CIV. P. 15(a). In that scenario, a plaintiff may dismiss voluntarily a resident defendant through amending the complaint only with judicial approval.

According to Plaintiffs' suggestion, and by implication, because the Rule 41(a)(2) dismissal and the Rule 15(a) amendment are not self-executing, such dismissals are not "voluntary" and, thus,

do not authorize a post-dismissal removal. This approach, however, is not only unduly formalistic, it is not the law. When, as here, it is apparent that the plaintiff has abandoned claims against a resident defendant, then the mechanics of the expression are less relevant than the underlying intention. That is, the totality of the circumstances, including the plaintiff's justification as well as the particular motion before the court, are relevant considerations when evaluating the voluntariness of the dismissal. For those reasons discussed above, in this case it is abundantly clear that Plaintiffs intended to abandon their claims against Refractory Sales. Merely because the dismissal stemmed from a court order does not demand the conclusion that the dismissal was involuntary. At bottom, and based on the facts of this case, it is clear that the dismissal of Refractory Sales was not "against the wish of" Plaintiffs. *Weems*, 380 F.2d at 546.

## III. CONCLUSION

The voluntary-involuntary rule is principally aimed at precluding removal after a *bona fide* dispute regarding a co-defendant's liability and/or presence in the litigation. On a contested motion for summary judgment, for example, removing the case post-dismissal would undercut the strong policy favoring a plaintiff's choice of forum. But here, Plaintiffs' consent to the adverse summary judgment resulted in the dismissal of a defendant that created complete diversity. That was the functional equivalent of a voluntary dismissal, which satisfies the rigors of the voluntary-involuntary rule.[7] Accordingly, Plaintiffs' Motion to Remand (Doc. #12) is due to be denied. A separate order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

---

[7]Based on this conclusion, it is unnecessary for the court to determine whether Plaintiffs fraudulently joined Defendant Refractory Sales.

**DONE** and **ORDERED** this 2nd day of July, 2010.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE